UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

LINDA MAGRI,

                  Plaintiff,         Civil Action No. 15-12935
                                        Honorable Nancy G. Edmunds
                                        Magistrate Judge David R. Grand
v.

COMMISSIONER OF
SOCIAL SECURITY,

                  Defendant.
_____/

## REPORT AND RECOMMENDATION
## ON CROSS-MOTIONS FOR SUMMARY JUDGMENT [9, 10]

Plaintiff Linda Magri ("Magri") brings this action pursuant to 42 U.S.C. §405(g), challenging the final decision of Defendant Commissioner of Social Security ("Commissioner") denying her application for Disability Insurance Benefits ("DIB") under the Social Security Act (the "Act"). Both parties have filed summary judgment motions [9, 10], which have been referred to this Court for a Report and Recommendation pursuant to 28 U.S.C. §636(b)(1)(B).

**I.    RECOMMENDATION**

For the reasons set forth below, the Court finds that substantial evidence supports the Administrative Law Judge's ("ALJ") conclusion that Magri is not disabled under the Act. Accordingly, the Court recommends that the Commissioner's Motion for Summary Judgment [10] be GRANTED, Magri's Motion for Summary Judgment [9] be DENIED, and that, pursuant to sentence four of 42 U.S.C. §405(g), the ALJ's decision be AFFIRMED.

## II. REPORT

### A. Procedural History

On April 30, 2012, Magri filed an application for DIB, alleging a disability onset date of November 23, 2007. (Tr. 160-61). This application was denied at the initial level. (Tr. 95-99). Magri filed a timely request for an administrative hearing, which was held on October 2, 2013, before ALJ John Pope. (Tr. 34-71). Magri, who was represented by attorney Marc Littman, testified at the hearing, as did vocational expert Brian Womer. (*Id.*). On December 27, 2013, the ALJ issued a written decision finding that Magri is not disabled under the Act. (Tr. 14-30). The Appeals Council granted Magri's request for review and, on June 22, 2015, issued a decision modifying the ALJ's decision in one respect, while adopting the remainder of the ALJ's findings, including his conclusion that Magri is not disabled. (Tr. 4-6). Magri timely filed for judicial review of the final decision on August 18, 2015. (Doc. #1).

### B. Framework for Disability Determinations

Under the Act, DIB are available only for those who have a "disability." *See Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007). The Act defines "disability" as the:

> inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. §423(d)(1)(A). The Commissioner's regulations provide that a disability is to be determined through the application of a five-step sequential analysis:

> Step One: If the claimant is currently engaged in substantial gainful activity, benefits are denied without further analysis.
>
> Step Two: If the claimant does not have a severe impairment or combination of impairments that "significantly limits . . . physical or mental ability to do basic work activities," benefits are denied without further analysis.

2

> Step Three: If the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the severe impairment meets or equals one of the impairments listed in the regulations, the claimant is conclusively presumed to be disabled regardless of age, education, or work experience.
>
> Step Four: If the claimant is able to perform his or her past relevant work, benefits are denied without further analysis.
>
> Step Five: Even if the claimant is unable to perform his or her past relevant work, if other work exists in the national economy that the claimant can perform, in view of his or her age, education, and work experience, benefits are denied.

*Scheuneman v. Comm'r of Soc. Sec.*, 2011 WL 6937331, at *7 (E.D. Mich. Dec. 6, 2011) (citing 20 C.F.R. §404.1520); *see also Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 534 (6th Cir. 2001). "The burden of proof is on the claimant throughout the first four steps …. If the analysis reaches the fifth step without a finding that claimant is not disabled, the burden transfers to the [defendant]." *Preslar v. Sec'y of Health & Human Servs.*, 14 F.3d 1107, 1110 (6th Cir. 1994).

**C.   Background**

    *1.   Magri's Reports and Testimony*

At the time of the administrative hearing, Magri was 59 years old, and at 5'2" tall, weighed 133 pounds. (Tr. 40). She lived in a house with her husband. (Tr. 40, 185). She completed high school and earned an associate's degree. (Tr. 41, 174). Previously, she worked for General Motors ("GM"), working the last twenty years on a computer performing "property management." (Tr. 42). In 2006, she retired from GM after thirty years of service, and has not looked for a job since. (Tr. 42-43, 173).

Magri alleges disability as a result of various physical and mental conditions, including right shoulder pain, neck and back pain, and depression. (Tr. 173). She has had four surgeries on her right shoulder – the first in 2007 and the last in 2013 – and indicated that her shoulder pain also affects her neck muscles. (Tr. 46-47). Recently, she started treating with a pain

management specialist, who prescribed Percocet, a TENS unit, and a "rubbing compound." (Tr. 47-48). In addition, Magri testified that she has arthritis and scoliosis in her back, which causes pain. (Tr. 44, 57). She takes several medications, including Cymbalta (for depression), trazodone (to help her sleep), Percocet (for pain), Klonopin, and ibuprofen. (Tr. 48-49, 176). None of these medications cause side effects. (Tr. 49). She also indicated that sitting still and putting heat on her neck and back sometimes help her pain. (Tr. 59).

Magri testified that she can sit for twenty minutes, walk for twenty minutes, stand for twenty minutes, and lift up to ten pounds. (Tr. 44-45, 59-61). She is able to drive and does not have any problem using her arms or legs to do so (although she testified it is difficult to turn her head because of the pain in her neck). (Tr. 64, 188). She is able to prepare meals, go shopping for clothes and groceries, use the computer, babysit her grandchildren, perform some household chores (such as dusting, loading the dishwasher, and folding laundry), feed and walk her dog, care for her personal needs, visit with friends and family members, and go to the movies. (Tr. 50-53, 56, 186-89). She testified that she suffers from depression, but acknowledged that that condition would not prevent her from working. (Tr. 54). She does not have any problems interacting with others or concentrating. (Tr. 57).[1]

   2.   *Medical Evidence*

Magri reported right shoulder complaints to her orthopedist, Michael Baghdoian, M.D., on August 24, 2007. (Tr. 346-47). He diagnosed Magri with bilateral shoulder adhesive capsulitis with tenobursitis and a possible right shoulder rotator cuff and/or labral tear and ordered an MRI of her right shoulder. (Tr. 345). This MRI, performed on September 6, 2007, showed diffuse signal abnormality within the superior labrum, with associated paralabral cysts

---

[1] In a third party function report dated June 18, 2012, Magri's husband, Lawrence Magri, generally corroborated his wife's statements. (Tr. 193-200).

4

and mild right shoulder effusion. (Tr. 225). When Magri returned to Dr. Baghdoian on September 10, 2007, continuing to complain of right shoulder pain, he suggested an "arthroscopic investigation of the right shoulder." (Tr. 343). That surgery was performed on October 1, 2007, and the procedures included chondroplasty of the glenoid condylar surface, removal of an intra-articular loose body, synovectomy, and debridement of the rotator cuff tendon, glenoid labrum, and Grade I SLAP lesion. (Tr. 224).

At subsequent examinations in October 2007, Dr. Baghdoian noted that Magri was doing well (Tr. 341-42); however, she reinjured her right shoulder when she fell in December 2007, and examination revealed limited abduction and extension, superior and anterior tenderness, and pain in the undersurface of the arm (Tr. 339-40). An MRI performed on January 4, 2008, showed findings consistent with a SLAP II-C tear, low grade biceps tendon tear, and low grade subscapularis tendon tear, and Dr. Baghdoian recommended surgical repair. (Tr. 223, 338).

A second arthroscopic surgery was performed on Magri's right shoulder on January 31, 2008. (Tr. 221-22). Subsequent examinations revealed continued pain and limited motion, and Dr. Baghdoian administered a series of three right shoulder injections, continued Magri on Vicodin, recommended physical therapy, and noted a fair to favorable prognosis. (Tr. 334-36).

On April 8, 2008, Magri was referred to Jerome Ciullo, M.D. by Dr. Baghdoian for a second opinion. (Tr. 217). On examination, Magri had reduced range of motion in the right shoulder with significant apprehension and overuse of the neck muscles to compensate. (*Id.*). There was muscle spasm along the levator scapulae and upper trapezial fibers and a positive impingement test. (*Id.*). X-rays revealed 20 degree angulation of the AC joint and bone on bone contact, "essentially fused," and a small spur at the anterior acromion anterolaterally. (*Id.*). Dr. Ciullo diagnosed Magri with right shoulder AC joint arthritis, subacromial impingement, and

5

overuse of neck muscles to protect the shoulder, and he recommended a subacromial decompression, Mumford procedure, and possible limited capsular release. (*Id.*). Thus, a third surgery was performed on Magri's right shoulder, after which she continued to receive injections and underwent physical therapy. (Tr. 227-42, 326-31). Between May and November 2008, Magri continued to demonstrate reduced range of motion in the right shoulder, but improvements were made and she reported feeling better. (Tr. 227-42, 256-64, 273-78). She was discharged from physical therapy on November 12, 2008, because she had met her long term goals. (Tr. 273).

Magri continued to report right shoulder pain to Dr. Baghdoian during late 2008 and early 2009, and examinations revealed continued limited range of motion and tenderness. (Tr. 318-26). However, Dr. Baghdoian noted improvement over time and continued Magri on conservative treatment, consisting primarily of pain medication and periodic injection therapy. (Tr. 312-26). An x-ray performed in November 2009 showed a teardrop effect on the undersurface of the proximal humerus at its articulation of the glenohumeral joint, and the AC joint was well separated from the previous resection. (Tr. 311). Dr. Baghdoian continued Magri on Vicodin and, on January 8, 2010, he referred her back to physical therapy and restarted injection treatment. (Tr. 309-11).

As Magri herself indicates, "2011 and 2012 brought no significant changes in [her] condition." (Doc. #9 at 15). Although treatment records dated after Magri's date last insured (March 31, 2012) contain reports of continued right shoulder and neck pain, Dr. Baghdoian continued to treat her with pain medication and injection therapy. Indeed, on March 20, 2012, just eleven days before the expiration of Magri's disability insured status, Dr. Baghdoian noted that Magri rated her right shoulder and neck pain at a 4/10; she had fair range of motion, though

6

"protected in the right shoulder"; her cervical spine was mobile, except that she was limited in the extremes of rotation; and peripheral vascularity was intact. (Tr. 281). Dr. Baghdoian refilled her Vicodin prescription and performed an injection that day. (*Id.*). At her next visit, ten days after her disability insured status expired, Magri still rated her pain at 4/10 and had fair range of motion, protected movement of both shoulders, and intraarticular crepitation bilaterally on internal and external rotation. (Tr. 280). Dr. Baghdoian noted that x-rays of Magri's <u>left</u> shoulder showed some degenerative changes, so he ordered an MRI (which later showed mild supraspinatus and infraspinatus tendinopathy and degenerative changes of that shoulder). (Tr. 280, 352).

On June 8, 2013, more than a year after her date last insured, Magri required another surgery on her right shoulder, this time an arthroscopic chondroplasty, synovectomy, debridement of the glenoid labrum, and under surface tear of rotator cuff tendon. (Tr. 400-02). At a follow-up visit on July 2, 2013, Dr. Baghdoian described this surgery as "very successful," and he continued to treat her with medication and physical therapy. (Tr. 364-66).

About a month before the administrative hearing, on August 26, 2013, Magri began treating with Razmig Haladjian, M.D. at a pain clinic. (Tr. 406-08). She complained of right shoulder pain and had severely restricted range of motion. (Tr. 406). Dr. Haladjian assessed Magri with chronic pain syndrome and right shoulder pain secondary to severe osteoarthritis and started her on Percocet, a compounded cream, and a TENS unit. (Tr. 407). At her next visit to Dr. Haladjian, Magri reported getting "good relief" with the Percocet and TENS unit. (Tr. 403).

The record also contains a Physical Residual Functional Capacity ("RFC") Questionnaire, dated November 5, 2012, and completed by Dr. Baghdoian. (Tr. 356-60). In that document, Dr. Baghdoian listed Magri's diagnoses as lumbago, cervicalgia, and shoulder

arthralgia, but characterized her prognosis as fair to favorable. (Tr. 356). He opined that Magri can sit, stand, and walk for less than two hours in an eight-hour workday; rarely lift less than ten pounds (and never lift more than ten pounds); frequently twist, stoop, crouch, and climb ladders and stairs; rarely look down, turn her head to the right or left, or look up; only occasionally hold her head in a static position; and engage in 50% handling, 75% fingering, and 25% reaching (including overhead) during the course of an eight-hour workday. (Tr. 357-59). Lastly, Dr. Baghdoian opined that Magri's impairments would likely cause her to be absent from work more than four days per month. (Tr. 359).

Finally, the record contains the November 27, 2012 opinion of state disability medical consultant William McCollum, M.D. (Tr. 361-62). Dr. McCollum opined that Magri can perform light work with occasional operation of hand controls with the right upper extremity; occasional reaching overhead bilaterally; occasional stooping, crawling, and climbing of ladders, ropes, or scaffolds; and no exposure to vibration. (Tr. 79-80, 361-62).

### 3. *Vocational Expert's Testimony*

Brian Womer testified as an independent vocational expert ("VE") at the administrative hearing. (Tr. 66-70). The ALJ asked the VE to imagine a hypothetical individual of Magri's age, education, and work experience who can perform sedentary work with the following additional limitations: only occasional use of the right upper extremity for hand controls; only occasional reaching overhead bilaterally; only occasional stooping, crawling, and climbing of ladders, ropes, or scaffolds; and no exposure to vibration. (Tr. 67-69). The VE testified that the hypothetical individual would be capable of performing Magri's past relevant work, both as she performed it and as the position is generally performed. (*Id.*).

8

### D. The ALJ's Findings

At Step One of the five-step sequential analysis, the ALJ found that Magri did not engage in substantial gainful activity between November 23, 2007 (her alleged onset date) and March 31, 2012 (her date last insured). (Tr. 16). At Step Two, the ALJ found that Magri has the severe impairments of degenerative osteoarthritis of the cervical spine; osteoarthritis of the lumbar spine; osteoarthritis of the right shoulder; history of bilateral shoulder adhesive capsulitis with tenobursitis; and history of right shoulder SLAP II-C tear, low grade biceps tendon tear, low grade subscapularis tear, capsulotenosynovitis, and tenosynotvitis with impingement syndrome, status post multiple arthroscopic surgical repair. (*Id.*). At Step Three, the ALJ found that Magri's impairments, whether considered alone or in combination, do not meet or medically equal a listed impairment. (Tr. 18).

The ALJ then found that Magri retains the RFC to perform sedentary work with the following additional limitations: only occasional use of the right upper extremity for hand controls; only occasional reaching overhead bilaterally; only occasional stooping, crawling, and climbing of ladders, ropes, or scaffolds; and no exposure to vibration. (Tr. 19).

At Step Four, the ALJ concluded, based in part on the VE's testimony, that Magri is able to perform her past relevant work as an asset manager/data processing support person.[2] (Tr. 29). As a result, the ALJ concluded that Magri is not disabled under the Act. (Tr. 30).

### E. Standard of Review

The District Court has jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. §405(g). Judicial review under this statute is limited in that the court "must affirm the Commissioner's conclusions absent a determination that the

---

[2] The Appeals Council modified this aspect of the ALJ's decision, finding that Magri is capable of performing her past relevant work as an asset manager only *as actually performed*. (Tr. 5).

9

Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005) (internal citations omitted); *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 654 (6th Cir. 2009) ("[I]f an agency has failed to adhere to its own procedures, we will not remand for further administrative proceedings unless the claimant has been prejudiced on the merits or deprived of substantial rights because of the agency's procedural lapses.") (internal quotations omitted). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (internal quotations omitted). In deciding whether substantial evidence supports the ALJ's decision, the court does "not try the case *de novo*, resolve conflicts in evidence or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Rogers*, 486 F.3d at 247 ("It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant.").

When reviewing the Commissioner's factual findings, the court is limited to an examination of the record and must consider the record as a whole. *Bass*, 499 F.3d at 512-13; *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992). The court "may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council," or in this case, the ALJ. *Heston*, 245 F.3d at 535; *Walker v. Sec'y of Health & Human Servs.*, 884 F.2d 241, 245 (6th Cir. 1989). There is no requirement, however, that either the ALJ or this court discuss every piece of evidence in the administrative record. *See Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 508 (6th Cir. 2006) ("[A]n ALJ can consider all evidence without directly addressing in his written decision every piece of evidence submitted by

a party.") (internal quotations omitted). If the Commissioner's decision is supported by substantial evidence, "it must be affirmed even if the reviewing court would decide the matter differently and even if substantial evidence also supports the opposite conclusion." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994) (internal citations omitted); *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009) ("if substantial evidence supports the ALJ's decision, this Court defers to that finding 'even if there is substantial evidence in the record that would have supported an opposite conclusion'").

**F. Analysis**

In her motion for summary judgment, Magri argues that: (1) the ALJ improperly declined to give controlling weight to the opinion of her treating physician, Dr. Michael Baghdoian, and (2) the Appeals Council incorrectly found that she could perform her past relevant work. Each of these arguments is addressed below.

*1. Substantial Evidence Supports the ALJ's Decision to Give Less than Controlling Weight to Certain Aspects of Dr. Baghdoian's Opinion*

Magri argues that the ALJ erred in declining to give controlling weight to the November 2012 opinion of her treating physician, Dr. Baghdoian. (Doc. #9 at 22-24). Courts have recognized that an ALJ "'must' give a treating source opinion controlling weight if the treating source opinion is 'well-supported by medically acceptable clinical and laboratory diagnostic techniques' and is 'not inconsistent with the other substantial evidence in [the] case record.'" *Blakley*, 581 F.3d at 406 (internal quotations omitted). While treating source opinions are entitled to controlling weight under these circumstances, it is "error to give an opinion controlling weight simply because it is the opinion of a treating source" unless it is well-supported and consistent with the record as a whole. *Soc. Sec. Rul. 96-2p*, 1996 WL 374188, at *2 (July 2, 1996); *see also Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004)

11

("Treating physicians' opinions are only given such deference when supported by objective medical evidence."). If the ALJ declines to give a treating physician's opinion controlling weight, he must document how much weight he gives it, considering a number of factors, including the "length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and the specialization of the treating source." *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004) (citing 20 C.F.R. §404.1527(c)(2) (ALJ must "give good reasons" for weight given to treating source opinion)).

In his November 5, 2012 opinion, Dr. Baghdoian listed Magri's diagnoses as lumbago, cervicalgia, and shoulder arthralgia. (Tr. 356). He opined that Magri can sit, stand, and walk for less than two hours in an eight-hour workday; rarely lift less than ten pounds (and never lift more than ten pounds); frequently twist, stoop, crouch, and climb ladders and stairs; rarely look down, turn her head to the right or left, or look up; only occasionally hold her head in a static position; and engage in 50% handling, 75% fingering, and 25% reaching (including overhead) during the course of an eight-hour workday. (Tr. 357-59). Lastly, Dr. Baghdoian opined that Magri's impairments would likely cause her to be absent from work more than four days per month. (Tr. 359).

The ALJ specifically considered Dr. Baghdoian's opinion, evaluating it as follows:

> To the extent this opinion is consistent with the claimant's residual functional capacity, especially regarding the claimant's use of the right upper extremity, the opinion is given significant weight, as said limitations are consistent with Dr. Baghdoian's own examination findings of consistent right shoulder and cervical spine tenderness and reduced range of motion. However, to the extent Dr. Baghdoian found the claimant more restricted than as set forth in the foregoing residual functional capacity, especially in terms of the claimant's ability to sit, stand, and walk, and absenteeism, the opinion is given less weight, as it is inconsistent with Dr.

> Baghdoian's own examination findings and mild to moderate diagnostic testing results.

(Tr. 29 (internal citations omitted)). In other words, the ALJ afforded significant weight to the portion of Dr. Baghdoian's opinion that addressed Magri's right upper extremity, as evidenced by the fact that his RFC finding limited Magri to only its occasional use for hand controls and to only occasional bilateral handling. (Tr. 19).

An ALJ may accept only part of a treating source's opinion and reject others, so long as he articulates "good reasons" for the weight assigned. *See Allen v. Comm'r of Soc. Sec.*, 561 F.3d 646, 651 (6th Cir. 2009). In this case, the ALJ gave good reasons for affording significant weight to Dr. Baghdoian's opinion regarding Magri's right upper extremity limitations. Specifically, he indicated that the limitations imposed were consistent with Dr. Baghdoian's own examination findings, which consistently evidenced right shoulder and cervical spine tenderness and reduced range of motion. (Tr. 29 (citing 279-350, 355-60, 364-402)). Notably, Magri does not appear to challenge the ALJ's assignment of "significant weight" to Dr. Baghdoian's opinion of her right upper extremity functional capacities and limitations.

So too, did the ALJ give good reasons for affording "less weight" to the portion of Dr. Baghdoian's opinion related to Magri's ability to sit, stand, and walk, and her absenteeism; he appropriately found those portions of the opinion to be "inconsistent with [the doctor's] own examination findings and mild to moderate diagnostic testing results." (Tr. 29). Magri does not articulate with any specificity whatsoever the way in which the ALJ erred in evaluating this portion of Dr. Baghdoian's opinion; rather, she states only that she "regularly followed with [him] for over 7 years" and asserts that "his conclusions, based on numerous x-rays, MRI studies and multiple surgeries, are virtually identical to those of a second shoulder specialist, a pain management physician [presumably Dr. Haladjian]." (Doc. #9 at 23).

As the Commissioner points out, however, Dr. Baghdoian's treatment notes from the relevant time period (November 23, 2007 through March 31, 2012) focus entirely on Magri's neck and right shoulder, except for one very brief incident of reported right knee pain. (Tr. 285-86). An MRI of the knee indicated "essential normalcy," and Dr. Baghdoian characterized the knee as "fairly stable," saying that it "should be treated conservatively." (Tr. 285). Moreover, although the record contains some evidence of low back pain (Tr. 246, 397), those symptoms improved with physical therapy (Tr. 265, 268), and there is no evidence of radiating back pain prior to Magri's date last insured. Accordingly, the ALJ gave good reasons for declining to credit Dr. Baghdoian's opinion of extreme limitations in walking, sitting, and standing, and those reasons are supported by substantial evidence.[3] *See, e.g., McGrew v. Comm'r of Soc. Sec.*, 343 F. App'x 26, 30-31 (6th Cir. 2009) (treating physician's opinion "is not entitled to controlling or deferential weight because it is not supported by proportionate objective findings and it lacks the necessary supportability and consistency to entitle it to even deferential weight").[4] While the foregoing is reason enough for affirming the weight given by the ALJ to this aspect of Dr. Baghdoian's opinion, the Court also notes that throughout his decision (including in the very next sentence after providing his explicit reasons for the weight given) the ALJ explained why

---

[3] Likewise, Dr. Baghdoian identified no objective medical evidence supporting his opinion that Magri would likely be absent from work more than four days per month (Tr. 359), and the Court finds nothing in his treatment notes supporting that conclusion. *See Stojic v. Comm'r of Soc. Sec.*, 2015 WL 9238986, at *4 (W.D. Mich. December 17, 2015) ("Here, Dr. Antinozzi's predictions of how often Plaintiff would likely be off task and miss work were conjecture, not a medical opinion.").

[4] The Court further notes that Dr. Baghdoian issued is opinion on November 6, 2012, more than seven months after Magri's disability insured status expired. The opinion does not clearly suggest that the limitations contained therein were present during some or all of the relevant time period. (Tr. 356-60). Indeed, it appears that Magri began to experience additional symptomatology <u>after</u> the expiration of her disability insured status. (Tr. 280 (reporting left shoulder pain on April 10, 2012), 398 (reporting left elbow pain on July 10, 2012), 397 (reporting low back pain on July 31, 2012)). Thus, it appears possible that Dr. Baghdoian's opinion does not accurately represent Magri's functioning during the relevant time period.

14

Magri's testimony and daily activities do not support "any greater limitations or restrictions than those included in the [RFC] set forth in this decision" (which necessarily include the ones proposed by Dr. Baghdoian which the ALJ did not adopt). (Tr. 29). For instance, the ALJ noted that Magri was able to "shop for groceries and clothes, dust, load the dishwasher, do laundry, prepare simple meals, help care for her pet dog, [] occasionally engage in home exercise…[and] babysit her grandchildren on a regular basis." (Tr. 27-28).

Magri also argues that the ALJ erred in affording "great weight" to the opinion of the state agency medical consultant, Dr. McCollum. (Doc. #9 at 23-24). Specifically, Magri asserts:

> Furthermore neither the ALJ, nor the [Appeals Council] adequately explained why the opinion of a records reviewer was given greater weight than that of the long time treating specialist. A general statement that Dr. McCollum's "opinion is consistent with the record as a whole," (Tr. 29), is no substitute for the rigor demanded by SSR 96-2p. Especially where that record details years of pain and a life style consistent with them. Nor does the fact that he "has significant knowledge of the social security administration program and regulations," (Tr. 29), establish that he knows Magri's pathology and its impact on function better than her own doctor.

(*Id.*). This argument is without merit.

As an initial matter, the mere fact that the ALJ afforded greater weight to Dr. McCollum's opinion than to that of Dr. Baghdoian does not in and of itself warrant remand. *See Blakley*, 581 F.3d at 409. Moreover, Magri's argument that the ALJ's evaluation of Dr. McCollum's opinion fails to satisfy the "rigor demanded by SSR 96-2p" is misplaced, as that Ruling only applies to the evaluation of *treating source* medical opinions. *See Soc. Sec. Rul. 96-2p*, 1996 WL 374188 (July 2, 1996) ("Giving Controlling Weight to Treating Source Medical Opinions"). It is Social Security Ruling 96-6p that applies to the evaluation of the opinions of state agency medical consultants, such as Dr. McCollum, and that Ruling provides that "[i]n appropriate circumstances, opinions from State agency medical … consultants … may be entitled to greater weight than the opinions of treating or examining sources." *Soc. Sec. Rul. 96-*

*6p*, 1996 WL 374180, at *3 (July 2, 1996). Here, the ALJ explicitly considered Dr. McCollum's opinion, which post-dated the expiration of Magri's disability insured status and included a review of all of the medical records from the relevant time period. (Tr. 29). He noted that Dr. McCollum's opinion was consistent with the record as a whole, including evidence of significant right shoulder and cervical spine tenderness and decreased range of motion, in addition to occasional gait abnormalities and straight leg raising, but otherwise intact sensation, generally normal lower extremity strength, and significant improvement with treatment. (*Id.*). Magri has not identified any specific medical evidence that contradicts Dr. McCollum's opinion, and it is simply insufficient for her to broadly assert – without any citation to the record – that her "years of pain" are inconsistent with this opinion. For these reasons, the Court finds that substantial evidence supports the ALJ's assignment of weight to the relevant medical opinions.

      2. *Substantial Evidence Supports the Appeals Council's Determination that Magri Can Perform Her Past Relevant Work as She Actually Performed It*

Magri also challenges the Appeals Council's determination that she is not disabled because she can perform her past relevant work as an asset manager, as actually performed. (Doc. #9 at 19-22). By way of background, the VE testified at the administrative hearing that Magri's past relevant work as an asset manager/data processing support person was sedentary in exertion, both generally and as she had actually performed it. (Tr. 67). The ALJ then presented the VE with a hypothetical claimant who was able to perform a limited range of light work (i.e., sharing the RFC that Dr. McCollum endorsed). (Tr. 67-68, 79-80, 361-62). The VE testified that those restrictions would allow for the performance of Magri's past relevant work. (Tr. 67-68). Relying in part on the VE's testimony, the ALJ subsequently found that Magri is not disabled because she can perform her past relevant work as an asset manager, either as that job is generally performed or as she had actually performed it. (Tr. 29-30).

16

Magri then sought review of the ALJ's unfavorable decision, pointing out to the Appeals Council that the job identified by the VE, according to its classification number in the Dictionary of Occupational Titles, is actually exertionally light (not sedentary). (Tr. 208, 210). Accordingly, Magri argued that the job was outside the sedentary RFC that the ALJ ultimately assessed for her. (Tr. 208-09). The Appeals Council granted review of the ALJ's decision (Tr. 155-59), and after considering Magri's arguments, issued a new decision that adopted all of the ALJ's findings except for his Step Four conclusion that Magri can perform her past relevant work as an asset manager either as generally or actually performed. (Tr. 4-6). Instead, the Appeals Council found that, with the ALJ's assessed RFC, Magri can perform the job as asset manager only *as she had actually performed it*. (Tr. 4-5).

In reaching this conclusion, the Appeals Council pointed to Magri's own description of the job's physical requirements. (Tr. 5 (citing Tr. 175)). In that report, Magri described her asset management job as follows: "I selected and input capital equipment and land data into a computer. I analyzed data and input into a computer. 80% of all duties were input into a computer …." (Tr. 175). Out of each work day, Magri indicated that she spent one hour walking; one hour standing; six hours sitting; no time climbing, stooping, kneeling, crouching, crawling, or handling large objects; 5.5 hours writing, typing, or handling small objects; and 30 minutes reaching. (*Id.*). The heaviest weight she lifted was less than ten pounds, and she frequently lifted that amount. (*Id.*). These physical demands are entirely consistent with the RFC the ALJ assessed (and the Appeals Council adopted): specifically, lifting no more than ten pounds at a time; standing and/or walking for two hours and sitting for six hours in an eight-hour workday; occasionally using the right upper extremity for hand controls; occasionally reaching

17

overhead bilaterally; occasionally stooping, crawling, and climbing; and avoiding even moderate exposure to vibration. (Tr. 19).

In her motion, Magri argues that because the ALJ limited her to only occasional use of her right upper extremity for hand controls, and occasional bilateral reaching overhead, she cannot perform her past relevant work. (Doc. #9 at 21). In making this argument, Magri cites to the VE's testimony that the job requires frequent reaching, handling, and fingering. (*Id.* (citing Tr. 70)). The problem for Magri, however, is that neither the ALJ nor the Appeals Council assessed any limitation in handling or fingering. (Tr. 5, 19). Magri cites to no evidence in the record that such limitations should have been assessed or that the ALJ should have found greater limitations in reaching than he did. Indeed, Dr. McCollum, whose opinion the ALJ gave "great weight," did not assess any limitation on Magri's abilities to handle or finger. (Tr. 80, 361-62). Similarly, the limitations assessed by the Appeals Council are entirely consistent with Dr. Baghdoian's opinion that Magri can use her hands to grasp, turn, or twist objects for 50% of an eight-hour workday; perform fine manipulations with her fingers 75% of the time; and use both arms to reach overhead 25% of the time. (Tr. 359). Moreover, Magri indicated in a disability report that her impairments do not affect her ability to use her hands, and she confirmed that she spent only half an hour *total* out of each eight-hour workday in asset management reaching *in all directions.* (Tr. 175, 190). Thus, the evidence establishes that the job as Magri actually performed it could easily accommodate the Appeals Council's assessed limitation to only occasional bilateral overhead reaching.[5]

---

[5] Moreover, even if the Court were to accept the premise that Magri should have been limited to only occasional reaching, handling, and fingering with the right upper extremity, a finding of disability would not necessarily result. The VE testified that an individual so limited *bilaterally* would be unable to perform Magri's past relevant work (or any sedentary work for that matter). (Tr. 70). But, even if this is true, it does not necessarily mean, as Magri suggests, that

18

Finally, Magri argues that the Appeals Council erred in failing to recognize that her pain "does not allow her the clear mind necessary to successfully perform skilled work," such as her past relevant work as an asset manager. (Doc. #9 at 22). Magri does not, however, cite to any evidence in support of this assertion and, indeed, the record demonstrates just the opposite. For example, in both disability reports and at the administrative hearing, Magri specifically denied any deficiencies in her mental capacities (such as the abilities to concentrate, complete tasks, understand and follow instructions, and get along with others). (Tr. 57, 190-91). Magri's husband agreed with these denials. (Tr. 198-99). Moreover, in finding that Magri has no severe mental impairment, the ALJ found only mild limitations in social functioning and concentration, persistence, or pace (Tr. 17-18), conclusions that the Appeals Council adopted and Magri does not challenge. Thus, this perfunctory argument is without merit.

For all of the above reasons, and upon an independent review of the entire record, the Court concludes that the ALJ's decision is supported by substantial evidence.

### III. CONCLUSION

For the foregoing reasons, the Court RECOMMENDS that the Commissioner's Motion for Summary Judgment [10] be GRANTED, Magri's Motion for Summary Judgment [9] be DENIED, and the ALJ's decision be AFFIRMED.

Dated: April 29, 2016  
Ann Arbor, Michigan

s/David R. Grand  
DAVID R. GRAND  
United States Magistrate Judge

---

"[c]ertainly then … a worker with only one fully functioning upper extremity is similarly precluded." (Doc. #9 at 21). Indeed, the Commissioner has clarified that individuals who have entirely lost the use of an upper extremity generally retain the ability to perform somewhere between light and sedentary work. *See Soc. Sec. Rul. 83-12*, 1983 WL 31253, at *4 (January 1, 1983).

**NOTICE TO THE PARTIES REGARDING OBJECTIONS**

Within 14 days after being served with a copy of this Report and Recommendation and Order, any party may serve and file specific written objections to the proposed findings and recommendations and the order set forth above. *See* 28 U.S.C. §636(b)(1); Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d)(1). Failure to timely file objections constitutes a waiver of any further right of appeal. *See Thomas v. Arn*, 474 U.S. 140, (1985); *United States v. Sullivan,* 431 F.3d 976, 984 (6th Cir. 2005). Only specific objections to this Report and Recommendation will be preserved for the Court's appellate review; raising some objections but not others will not preserve all objections a party may have. *See Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987); *see also Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 596-97 (6th Cir. 2006). Copies of any objections must be served upon the Magistrate Judge. *See* E.D. Mich. LR 72.1(d)(2).

A party may respond to another party's objections within 14 days after being served with a copy. *See* Fed. R. Civ. P. 72(b)(2); 28 U.S.C. §636(b)(1). Any such response should be concise, and should address specifically, and in the same order raised, each issue presented in the objections.

**CERTIFICATE OF SERVICE**

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on April 29, 2016.

                                          s/Eddrey O. Butts
                                          EDDREY O. BUTTS
                                          Case Manager